(93 South. 113)

No. 25250.

**NOLAN v. BROWN et al.**

**In re WHITE.**

(June 27, 1922. Rehearing Denied July 17, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Evidence** ⬥423(6)—**Parol evidence admissible to show note given for accommodation of apparent indorser.**

Under Negotiable Instruments Law, § 115, providing that notice of dishonor need not be given an indorser for whose accommodation the instrument was made or accepted, parol evidence is admissible to show that the note was really given for the benefit of an apparent indorser.

2. **Bills and notes** ⬥395—**Notice of dishonor not dispensed with because renewal notes taken at solicitation of indorser.**

Negotiable Instruments Law, § 115, dispensing with notice of dishonor where the instrument was made or accepted for the indorser's accommodation, refers to some pecuniary benefit or accommodation, and it is not sufficient that renewal notes were taken by the payee at the solicitation of the maker and indorser, instead of suing on the old notes.

3. **Bills and notes** ⬥395—**Notice of dishonor to one not entitled to look to any one else for reimbursement unnecessary.**

If a note is really for the accommodation of one placing his name thereon in some other capacity than that of one primarily bound, so that he may not look to any one else for reimbursement, he is not entitled to notice of dishonor under Negotiable Instruments Law, § 115.

4. **Bills and notes** ⬥416—**Notice of dishonor given more than two months after maturity not timely.**

Where a note matured on October 15th, notice of dishonor given on December 22d was not timely.

Action by Frank J. Nolan against Owen W. Brown and another. A judgment for plaintiff was affirmed by the Court of Appeal, and the defendant Louis M. White applies for a writ of review. Judgments an-nulled and set aside as to the appealing defendant, and plaintiff's demands rejected.

E. M. Stafford and Daniel Wendling, both of New Orleans, for applicant.

J. Zach Spearing, of New Orleans, for appellee.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. Plaintiff sued Brown as maker and White as indorser, respectively of nine notes, payable to plaintiff's order at monthly intervals. White excepted that the petition disclosed no cause of action as to him; but plaintiff was allowed to amend by alleging that he had been the holder of a former series of notes representing the same indebtedness, upon which he was about to sue when the present notes were given by Brown and indorsed by White at the earnest solicitation of both, and the indebtedness extended over a longer period of time, for which reason White was not an accommodation indorser entitled to notice. Thereupon the exception which had been leveled at the failure to allege notice of dishonor to White was overruled: and defendant White answered, pleading the want of notice and that he had been thereby discharged.

The district court, after trial, gave judgment for plaintiff against both defendants, and White appealed to the Court of Appeal for the parish of Orleans. That court affirmed the judgment of the district court, and the case is now before us on certiorari and writ of review.

Opinion.

The facts are not disputed, and the sole question is: Was White discharged by the failure to give him notice of dishonor?

Brown had given plaintiff certain notes with White as accommodation indorser, which were about to prescribe, and, upon plaintiff threatening to sue both parties, they executed and delivered to him 12 notes,

in lieu of those which he then held, 3 of the new series being past due when delivered and must have been paid, for they are not sued upon in this case.

Both the district court and Court of Appeal conceded that ordinarily an accomodation indorser is discharged by the failure to notify him of dishonor, but base their conclusions upon the idea that the indorser in this instance falls within the class contemplated by section 115 of the Act No. 64 of 1904 (Uniform Negotiable Instruments Law), the pertinent portion of which reads as follows:

"Sec. 115. Notice of dishonor is not required to be given to an indorser in either of the following cases:

   *    *    *    *    *    *    *

"3. Where the instrument was made or accepted for his accommodation."

It is not disputed that White received no financial benefit whatever from either the first or second series of notes, but is contended that he was accommodated within the meaning of the section just quoted by the plaintiff's acceptance of the new notes, with extension of time to Brown and the foregoing of the right to immediately sue White. There is nothing to show that White was timely notified of the dishonor of the first series of notes, other than that, just before the accruing of prescription, he had appeared with the maker and executed the renewal notes, signing as indorser as in the first instance.

[1] We cannot agree with the argument of defendant's counsel that parol evidence cannot be received to prove that the note upon which White appeared as indorser was really given for his benefit. If this were true, then the third paragraph of section 115 of the statute, above quoted, would be rendered nugatory, for it could never be shown that a bill or note was "made or accepted for his (the indorser's) accommoda-

tion," unless there was some contemporaneous writing to that effect. The authorities cited and relied upon were without regard to this provision of the law, which had not been enacted at the time they were pronounced.

[2, 3] However, we think that the provision referred to means some pecuniary benefit or accommodation, and not merely the foregoing of a lawsuit. The well-recognized and underlying principle upon which this clause in the law is founded is that one needs no notice of the failure to pay his own debt. Whenever a negotiable bill or note is given for which one in reality is primarily bound, though by the manner in which his name is placed thereon he may appear to be bound in some other capacity, the true facts may always be shown as between the original parties; and, if the obligation is for his accommodation, in the sense that he may not look to some one else for reimbursement if he pay in whole or in part, then he is not entitled to notice. The reason, of course, for requiring notice to those not primarily bound, is that they may protect themselves as against those who really owe the debt. Daniels on Neg. Inst. (6th Ed.) vol. 2, p. 1163, §§ 995b, 996.

[4] In the instant case it is not, as above stated, pretended that White received any benefit from the new notes other than the withholding of suit, and he assumed, on the face of the contract, the same character of liability as before. He would have at all times, had he paid the notes, had the right to sue Brown for every penny so paid. The three notes which were past due when indorsed and delivered must have been paid, and there is nothing in the record to show that they were paid by any one other than Brown, the maker. As to the first one which thereafter matured (all 12 having been executed and delivered October 14, 1919) on October 15, 1919, the first notice which appears

to have been given White of dishonor was on December 22d of the same year, which could hardly be said to have been timely.

Thousands of transactions are taking place daily in which men indorse bills and notes for others for accommodation, which are permitted to be renewed from time to time; and, if the contention of the plaintiff and the holding of the lower courts were correct, all that would be necessary to bind the indorsers indefinitely, or so long as the payee might wish to defer action, would be to procure one renewal and the reindorsement of the indorsers. Thereafter no notice of dishonor would be necessary. We do not think this is the meaning of the law.

For the reasons assigned, the judgments of the lower courts are annulled and set aside as to defendant Louis M. White, and the demands against him are rejected at plaintiff's cost.

Rehearing refused by the WHOLE COURT.